(October 1, 1917.)

OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant, v. H. E. WILLIAMS, J. L. SILVERS and JULIA A. SILVERS, Respondents.

[168 Pac. 14.]

PUBLIC LANDS—RAILROADS—RIGHT OF WAY—CAREY ACT LANDS.

> After a contract has been made between the United States and a state whereby lands are segregated from the public domain pursuant to the Carey Act of Congress, such lands are reserved from sale by the United States and are not public lands within the meaning of the act of Congress of March 3, 1875, granting to railroads rights of way through the public domain, and are not subject to location thereunder.

APPEAL from the District Court of the Fourth Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action for an injunction. Judgment for defendants. *Affirmed.*

George H. Smith and H. B. Thompson, for Appellant.

The statute, granting to railroads the right of way through the public lands of the United States, should be liberally construed with a view to effectuating the purpose which Congress had in enacting it. (*Winona & St. Paul R. Co. v. Barney,* 113 U. S. 618, 5 Sup. Ct. 606, 28 L. ed. 1109; *United States v. Denver & R. G. R. Co.,* 150 U. S. 1, 14 Sup. Ct. 11, 37 L. ed. 975.)

"A section of the statute should be construed in the light of the purposes for which the legislature enacted the particular act, of which such section is a part." (*Colburn v. Wilson,* 24 Ida. 94, 132 Pac. 579.)

The lands, upon which the railroad company made its location of line and filing, were public lands of the United States, and a right of way vested in the railroad company by virtue

thereof and the act of Congress of March 3, 1875. (*St. Joseph & Denver City R. R. Co. v. Baldwin*, 103 U. S. 426, 26 L. ed. 578; *Union Pacific Ry. Co. v. Douglas County*, 31 Fed. 540; *Riverside Township v. Newton*, 11 S. D. 120, 75 N. W. 899; *United States v. Blendaur*, 128 Fed. 910, 63 C. C. A. 636; *Minidoka & S. W. R. Co. v. Weymouth*, 19 Ida. 234, 113 Pac. 455; *United States v. Minidoka & S. W. R. Co.*, 190 Fed. 491, 111 C. C. A. 323.)

The circumstance that the filing of the railroad company across the lands in question was approved by the Secretary of the Interior is strongly persuasive of the conclusion that the lands were subject to the act of March 3, 1875. (*Rio Grande Western Ry. Co. v. Stringham*, 38 Utah, 113, 110 Pac. 868; *Oregon Short Line R. Co. v. Stalker*, 14 Ida. 361, 362, 94 Pac. 56; *Rierson v. St. Louis & S. F. Ry. Co.*, 59 Kan. 32, 51 Pac. 901; *Kindred v. Union Pac. R. R. Co.*, 225 U. S. 582, 32 Sup. Ct. 780, 56 L. ed. 1216.)

Sweeley & Sweeley, for Respondents.

The words "public lands" are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws. (6 Words & Phrases, 1st ser., 5793, citing cases from a number of courts. (*Bardon v. Northern Pac. Ry. Co.*, 145 U. S. 535, 12 Sup. Ct. 756, 36 L. ed. 806; *Atlantic & Pac. R. Co. v. Fisher*, 1 Land Dec. 392.)

Lands in reservation for any purpose are not public lands within the operative effect of a subsequent grant of Congress, although not in terms excepted from the grant. (*State of Louisiana*, 33 Land Dec. 13; *O'Connor v. Stewart*, 15 Land Dec. 555; *Santa Fe, Prescott & Phoenix Ry. Co.*, 22 Land Dec. 685; *Montana Central R. R. Co.*, 25 Land Dec. 250.)

MORGAN, J.—This action was instituted by appellant to restrain respondents from entering upon and occupying certain portions of a right of way, 200 feet wide, 100 feet on each side of the center of its track, situated in Twin Falls

county and claimed by it as successor in interest to the Minidoka and Southwestern Railroad Company. Upon a hearing of the cause judgment was rendered in favor of respondents, 'from which this appeal has been taken.

On February 26, 1904, appellant's predecessor in interest, the railroad company above mentioned, filed its articles of incorporation, maps and plats, and made and filed a definite location of its proposed right of way under the provisions of the act of Congress of March 3, 1875, which were approved by the Secretary of the Interior on August 10, 1904. The railroad was constructed in the spring of 1905, and in 1910 was conveyed to appellant.

On July 1, 1901, the state of Idaho entered into an agreement with the United States wherein it was provided that the state should cause to be irrigated and reclaimed a large tract of land over a part of which the right of way in dispute is located. This agreement was made under the provisions of the act of Congress of August 18, 1894, amended by the act of June 11, 1896, known as the Carey Act, which authorizes the Secretary of the Interior, with the approval of the President, upon proper application of any of the states in which there is situated desert lands, to enter into a contract binding the United States to donate, grant and patent to the state, free of cost for survey or purchase, such desert lands, not exceeding one million acres, as the state may cause to be irrigated, reclaimed and occupied, and not less than twenty acres of each 160 acre tract to be cultivated by actual settlers.

The lands described in the agreement were segregated from the public domain in accordance with the provisions thereof and pursuant to the act of Congress above mentioned. Thereafter an irrigation system was constructed and the lands so segregated were reclaimed and patent issued from the United States to the state on November 20, 1905, and from the state to respondent, Julia A. Silvers, for the land in dispute, in 1908.

Appellant's predecessor in interest had obtained from the settlers a right of way 100 feet in width, being 50 feet on

each side of the center of its track, and the land in contro-
versy is outside of this 100-foot strip, but within the 200-foot
strip claimed under the act of March 3, 1875.   This act is
to be found in 18 Stats. at L., 482, and the parts material to
the determination of this case are as follows:

"Sec. 1.   That the right of way through the public lands of
the United States is hereby granted to any railroad company
duly organized under the laws of any State or Territory, ex-
cept the District of Columbia, or by the Congress of the
United States, which shall have filed with the Secretary of
the Interior a copy of its articles of incorporation, and due
proofs of its organization under the same, to the extent of
one hundred feet on each side of the central line of said
road; . . . .

"Sec. 5.   That this act shall not apply to any lands within
the limits of any military, park, or Indian reservation, or
other lands especially reserved from sale, unless such right of
way shall be provided for by treaty-stipulation or by act of
Congress heretofore passed."

It should be noted that the railway company made its
definite location or accepted the offer of the United States,
after the Carey Act agreement, but prior to the entry by
Julia A. Silvers or the issuance of the patent to the state.
The question involved is whether, by the Carey Act segrega-
tion, the lands therein contained ceased to be public lands
and were reserved from sale as contemplated by the act of
1875.

It appears to be well settled that if anyone acquires a vested
interest in the public lands of the United States before a
railroad company has accepted the offer of the government
made by that or similar acts by filing its maps and making
its definite location, the lands in which such interest is ac-
quired are no longer public lands within the meaning of the
statute, and the railroad company must compensate the
party holding such interest in order to acquire a right of
way.   (32 Cyc. 990.)

By the act of March 3, 1875, a standing offer is made by
the government.   However, no contract can be deemed to

have been made with the railroad company, since it failed to accept the offer by performing its prescribed conditions prior to its withdrawal.

The provisions of the Carey Act undoubtedly constitute an offer to the public land states having desert lands and when, in 1901, Idaho entered into the agreement with the United States there was a complete contract, absolutely binding upon the government as long as its conditions were performed by the state.   It cannot have been the intention of Congress that the government would violate that contract and, by a later agreement, convey to the railroad company an interest in the lands adverse to that of the state.   The contract segregated the lands from the public domain, and they could not thereafter be acquired for right of way purposes under the act of March 3, 1875, because they were no longer public lands of the United States as contemplated by sec. 1, of that act, and because they had been especially reserved from sale by the United States within the meaning of sec. 5 thereof.

The judgment is affirmed.   Costs are awarded to respondents.

Budge, C. J., and Rice, J., concur.